BEFORE THE JUDICIAL PANEL ON
MULTI DISTRICT LITIGATION

In Re: ONE APUS Incident )
dated November 30, 2020   )
                              )           MDL DOCKET NO. -

MEMORANDUM IN SUPPORT OF MOTION BY THE DEFENDANTS
FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR
COORDINATION OR CONSOLIDATION OF PRETRIAL PROCEEDINGS

Pursuant to 28 U.S.C. § 1407, Defendants identified below ("Defendants" or "Movants") respectfully submit this Memorandum in Support of their Motion for Transfer of Actions. The Defendants include multiple Non-Vessel Owning Common Carriers ("NVOCC") that are involved in numerous pending actions concerning an incident occurring on November 30, 2020 on board the M/V ONE APUS ("ONE APUS" or "Vessel") resulting in significant cargo loss and damage. The pending actions presently subject to this motion are identified on the accompanying Schedule of Actions. (Attached as Exhibit "A"). The legal theories and factual assertions in all of these actions are virtually identical and arise from a common set of facts.

I.     SUMMARY OF THE CASE

On November 30, 2020, while sailing from Asia to the United States West Coast, the ultra large container ship ONE APUS allegedly encountered severe weather which reportedly resulted in a substantial roll during which an estimated 800 containers were lost overboard and another 1,000 containers damaged but remaining on board as a result of the collapse of the container stacks.

After the loss, the Vessel's owners instructed the Vessel to proceed to Kobe, Japan in order to assess and repair the damage where possible and to determine the number of containers lost. As a result, the Vessel's schedule was severely impacted. The Vessel was unable to proceed to its first intended port of call, Long Beach, California, until on or about April 12, 2021 when some of

the partially damaged cargos were discharged.[1]  The exact reason for the Vessel's stow collapse, loss of and damage to 1,816 containers and their cargos is still unknown.

The Movants, all NVOCCs, are defendants in these pending actions filed by either subrogated underwriters or the cargo shippers or consignees of the allegedly lost or damaged cargoes.  NVOCCs have been described as:

> [A] non-vessel operating common carrier ("NVOCC")…provides cargo haulage and other import and export services.  NVOCCs contract with merchants or cargo owners who want to ship their goods, agreeing to transport those goods overseas via ship, and generally issuing that merchant a bill of lading that governs the voyage…  The NVOCC, however, does not own or operate the ship that will transport such goods.  *See* 46 U.S.C.§ 40102(17)(A).  Instead, the NVOCC purchases space on the ship of an ocean common carrier – who physically transports the goods – and the carrier then issues the NVOCC its own bill of lading when the goods are loaded onto the ship. 46 U.S.C. §§ 40102(17)(B), (18) (explaining that NVOCC is a "shipper in its relationship with an ocean common carrier," which is the "vessel-operating common carrier").

*MTS Logistics, Inc. v. Innovative Commodities Group, LLC,* 442 F. Supp. 3d 738, 742 (S.D.N.Y. 2020).

The ONE APUS was at all material times owned by Chidori Ship Holding, LLC ("Chidori"), and bareboat chartered to Jessica Ship Holding, S.A. ("Jessica").  The Vessel was time chartered to a NYK Line affiliated company and sub-time chartered to Ocean Network Express Pte. Ltd. ("ONE").  ONE was, in turn, party to a slot charter or Vessel Sharing Agreement ("VSA") with three other entities, Hapag-Lloyd Aktiengesellschaft ("Hapag-Lloyd"), Hyundai Merchant Marine ("HMM") and Yang Ming Transport Corporation ("Yang Ming") (collectively "ocean carriers").  Since the incident, the ONE APUS has been re-assigned to another ONE service

---

[1] In addition to the multitude of cases arising from this incident, various petitions to conduct discovery in aid of foreign litigation were filed and the foregoing facts are found in one of those petitions, *In Application of Roanoke Insurance Group, Inc. v. W.E. Cox Group (USA), Ltd.,* Case No. 21-80110 (N.D. Cal.).

and routinely calls at various U.S. east coast ports including the Port of New York (Global Container Terminal in Bayonne, New Jersey).

Presently, the Movants are aware of thirty four actions against forty two different NVOCCs pending in seven different United States District Courts arising out of the ONE APUS incident, with the vast majority of the cases having been filed in the Southern District of New York ("Actions").[2] It is anticipated that many more cases will follow since, arguably, the applicable statute of limitations for the damaged cargos does not expire until April 2022 or even later. The ONE APUS litigation is different than most other large containership incidents that have been previously litigated and many other marine casualties, in that no vessel owner Limitation of Liability action pursuant to 46 U.S.C. § 30501 *et seq.*, has been filed. Such an action has the effect of consolidating all actions filed or to be filed arising out of an incident, as part of the Court's "monition." As in a Limitation Action, the vast majority of the evidence necessary for the carriers' defenses, including those of the NVOCCs, is in the control of the Vessel, her officers and crew, the Owners Chidori and managers NYK as well as the time charterers ONE and the slot charterers, Hapag-Lloyd, HMM and Yang Ming (collectively "ocean carriers"). The allegations in the Plaintiffs' Complaints against the NVOCCs are almost identical and the evidence necessary for the NVOCCs' defense is common to all cases.

**II.    LEGAL STANDARD**

Section 1407 of Title 28 provides, in pertinent part, the following:

> **(a)** When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which

---

[2] It is not possible to verify how many are pending since there is no common search term to the captions of these cases.

it was transferred unless it shall have been previously terminated: *Provided, however*, That the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.

**(c)** Proceedings for the transfer of an action under this section may be initiated by--
**(i)** the judicial panel on multidistrict litigation upon its own initiative, or
**(ii)** motion filed with the panel by a party in any action in which transfer for coordinated or consolidated pretrial proceedings under this section may be appropriate.

Actions containing allegations with common questions of fact may be transferred and consolidated or coordinated pursuant to section 1407 if transfer will facilitate the convenience of the parties and witnesses and will promote the just and efficient conduct of the transferred cases. 28 U.S.C. § 1407.  The Panel typically considers four factors in deciding whether to transfer a case under Section 1407:

    a.    the elimination of duplication in discovery;

    b.    the avoidance of conflicting rules and schedules;

    c.    the reduction of litigation costs; and

    d.    the conservation of the time and effort of the parties, attorneys, witnesses and courts.

*See* Manual for Complex Litigation (Fourth) § 20.131 (2004) (citing *In re Plumbing Fixture Cases,* 298 F. Supp. 484 (J.P.M.L. 1968)).  Each of these factors supports the transfer and consolidation of the cases filed in regard to the incident.

**III.   ARGUMENT**

    **A.   The Litigation Satisfies the Requirements for Consolidation and Transfer Under 28 U.S.C. § 1407.**

Transfer for coordinated or consolidated pretrial proceedings under section 1407 is appropriate and necessary here.  The Actions involve similar allegations and legal standards and will likely be numerous.  Unless pretrial proceedings in this case are coordinated or consolidated,

the parties will incur excessive costs due to duplicative discovery and will face the risk of inconsistent rulings on a variety of matters.

### 1. The Litigation Involves Common Questions of Fact

In assessing whether transfer for pretrial coordination or consolidation is appropriate under section 1407, the Panel looks to the pleadings to determine the extent to which common questions of fact are present.  The Complaints in these cases present common questions of fact.  Each Complaint is based on allegations that an NVOCC violated its obligations as a carrier of the subject cargo and/or breached its contract of carriage and/or violated the United States Carriage of Goods by Sea Act ("COGSA").  46 U.S.C. § 30701 (notes). The NVOCCs' defenses to these claims include the COGSA defenses of perils of the seas or Act of God under the NVOCC's bill of lading and/or COGSA, *id.,* which will be supported almost entirely from evidence from the Vessel and the ocean carriers.  Similar MDL cases have not been found principally because containership casualty incidents of this sort up until this incident are consolidated as a function of the vessel owner's having filed a Limitation of Liability Action.  46 U.S.C. § 30501 *et seq*.  Because no such action had been filed by Chidori or Jessica, MDL consolidation or coordination is necessary.

### 2. The Parties Face Duplicative Discovery Absent Transfer and Consolidation

Because the allegations in all the cases are substantially alike and derive from the same common event, the parties face duplicative discovery if the cases are not transferred and consolidated or coordinated.  This is an important consideration for the panel in that transfer and consolidation or coordination "ensure[s] that the actions are supervised by a single judge who from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery … and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *Resource Exploration Inc. Sec. Litig.,* 483

F. Supp. 817, 821 (J.P.M.L. 1980). Without consolidation or coordination, the parties in these actions will necessarily engage in duplicative discovery. All parties will be seeking the same documentation from the ocean carriers and will likely need to depose the same witnesses. The NVOCCs will raise the same defenses, argue the same issues, seek the same protective orders, and assert the same privileges in each case. Accordingly, coordination or consolidation of the cases will permit the parties to coordinate their efforts in a single proceeding, thereby promoting efficiency and preserving party and judicial resources.

### 3. Transfer and Consolidation or Coordination will Prevent Inconsistent Pretrial Rulings

The Panel considers the possibility of inconsistent rulings on pretrial issues because of the possible *res judicata* or collateral estoppel effects on other cases. *See In re Enron Sec. Derivative & ERISA Litig.,* 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings). Many of the NVOCC defendants are defendants in multiple cases in different districts. Because of the similarity of the allegations in all of the Complaints, and the likelihood that future filed actions will contain the same allegations, the possibility of inconsistent rulings on pretrial motions is substantially increased. For example, the Movants anticipate that some of the ocean carriers will file motions to dismiss and Plaintiffs will file motions for summary judgment. Inconsistent rulings on those dispositive motions would create inherent conflicts in the Actions. In addition, because of the similarity of the allegations, the NVOCCs will assert the same defenses in opposition to the Plaintiffs' claims, creating a real risk of inconsistent pretrial rulings. In light of this risk, centralization is in the best interests of all parties to the litigation as well as the courts.

### 4. There are enough Actions to Support Transfer and Centralization

As stated above, there are currently thirty three individual cases pending against forty two different NVOCCs in seven separate district courts and Movants believe many more will follow. The Panel has routinely ordered centralization even where three or fewer cases are pending. *See, e.g., In re Wireless Tel. Replacement Prot. Programs Litig.,* 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (transfer for centralized coordinated or consolidated proceedings in three consumer protection cases and determining that pending motions can be presented to and decided by the transferee judge); *In re Phila. Life Ins. Co. Sales Pracs. Litig.,* 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (transfer for centralized coordinated or consolidated pretrial proceedings in two deceptive insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation); *In re Amoxicillin Patent & Antitrust, Litig.,* 449 F. Supp. 601, 603 (J.P.M.L. 1978) (transfer for coordinated or consolidated pretrial proceedings in three cases involving patent and antitrust issues); *In re Alodex Corp.,* 380 F. Supp. 790, 791 (J.P.M.L. 1974) (transfer for coordinated or consolidated pretrial proceedings in three securities actions).

Given the number of current and likely tag-along actions related to this incident, transfer and centralization is appropriate.

### IV. The Southern District of New York is the Appropriate Transferee Forum

The applicable factors support the United States District Court for the Southern District of New York as the appropriate jurisdiction for coordination or consolidation of pretrial proceedings in this litigation. Currently, fifteen of the thirty three cases filed are pending in the Southern District of New York, all but one of these cases have been referred to the Honorable Analise Torres as related cases. The first such action, *MSIG Mingtai Insurance Co. et al. v. Danmar Lines, Ltd.,*

1:21-CV-07994-AT-BCM, is also the earliest pending action arising from the incident. Judge Torres has announced in each case that she intends to consolidate the cases before her.

Personal jurisdiction over the ocean carriers is available in New York. While some ocean carriers may seek to rely on foreign jurisdiction clauses in their bills of lading to attempt to dismiss the Complaints, other cannot. Moreover, NYK has an office within the Court's jurisdiction. The vessel *in rem* is amenable to service of process in New York or neighboring Bayonne, New Jersey and the Vessel's crew, when the ONE APUS calls in New York, will be subject to the subpoena power of the Court under Fed. R. Civ. P. 45. Regardless, discovery from all of the ocean carriers is most efficient in New York due to the myriad contacts each has with the jurisdiction.

Judge Torres has been a District Judge since 2013, prior to which she was a jurist in various New York state courts since 2003. Although Movants are unaware of any MDL cases previously assigned to her, Judge Torres has overseen a number of class actions including *Sylvia Tillman et al. v. Morgan Stanley Smith Barney, LLC*, 20-CV-05914-AT, a substantial data breach litigation.

## V. **CONCLUSION**

For the reasons set forth herein, NVOCCs' motion for transfer of actions pursuant to 28 U.S.C. § 1407 should be granted and these related actions, as well as any subsequently filed actions containing similar allegations, should be transferred to the U.S. District Court for the Southern District of New York for coordinated or consolidated pretrial proceedings.

Dated: February 8, 2022  
      New York, NY

Respectfully submitted,  
Attorneys for Defendants

Apex Logistics International Inc.  
Orient Express Container, Co. Ltd.  
Flexport International LLC  
Dimerco Express (USA) Corp.  
RS Logistics Limited  
Oregon International Air Freight Co.  
Air Tiger Express (ASIA) Inc.

By:     /s/ *Thomas L. Tisdale*  
Thomas L. Tisdale  
Austyn L. Carolin  
Tisdale & Nast Law Offices, LLC  
200 Park Avenue, Suite 1700  
New York, NY  10166  
Tel:   212-354-0025  
Fax:   212-869-0067  
*ttisdale@tisdale-law.com*  
*acarolin@tisdale-law.com*

Attorneys for Defendants

Apex Logistics International Inc.  
Apex Maritime Co. (LAX), Inc.  
Apex Maritime Co. (ORD), Inc.  
Apex Maritime Co., Inc.  
Rohlig USA, LLC  
Flexport International LLC

By:     /s/ *Erich P. Wise*  
Erich P. Wise  
Danielle A. Cruz  
Flynn, Delich & Wise, LLP  
One World Trade Center, Suite 1800  
Long Beach, CA 90831-1800  
Tel:   562-435-2626  
Fax:   562-437-7555  
*erichw@fdw-law.com*  
*daniellec@fdw-law.com*